1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MISSY NEWTON,                          No.  2:13-cv-2458-GEB-EFB

12            Plaintiff,

13       v.                                 FINDINGS AND RECOMMENDATIONS

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
              Defendant.
16

17

18       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act.[1]  The parties' cross-motions for summary judgment are pending.

21   For the reasons discussed below, it is recommended that plaintiff's motion be granted and

22   defendant's motion be denied.

23   I.      BACKGROUND

24       Plaintiff filed an application for SSI on December 6, 2010, alleging that she had been

25   disabled since February 1, 2001.  Administrative Record ("AR") 82, 162-163.  Her application

26   was denied initially and upon reconsideration.  *Id.* at 97-100, 104-108.  On July 30, 2012, a

27   _____

28       [1]  This case is before the undersigned pursuant to Eastern District Local Rule 302(c)(15).
     *See* 28 U.S.C. § 636(b)(1).

                                    1

hearing was held before administrative law judge ("ALJ") Peter Belli.  *Id.* at 28-64.  Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified.  *Id.*

On August 28, 2012, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[2]  *Id.* at 11-23.  The ALJ made the following specific findings:

1.  The claimant has not engaged in substantial gainful activity since December 6, 2010, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: posttraumatic stress disorder (PTSD), mood disorder, dysthymia, and polysubstance dependence in remission (20 CFR 416.920(c)).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

\* \* \*

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertion limitations: able to receive, understand, remember, and carry out simple job instructions; able to occasionally receive, understand, remember, and carry out detailed job instructions; can frequently interact appropriately with coworkers and supervisors; limited to occasional exposure and ability to interact with the general public; able to adjust to regular changes in the workplace, and able to make workplace adjustments.

\* \* \*

5.  The claimant is unable to perform any past relevant work (PRW) (20 CFR 416.965).

\* \* \*

6.  The claimant was born on January 16, 1976 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964)

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 6, 2010, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 13-23.

/////

3

1     Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 5-7, and on

2  September 24, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final

3  decision of the Commissioner. *Id.* at 1-4.

4  II.     LEGAL STANDARDS

5     The Commissioner's decision that a claimant is not disabled will be upheld if the findings

6  of fact are supported by substantial evidence in the record and the proper legal standards were

7  applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

8  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

9  180 F.3d 1094, 1097 (9th Cir. 1999).

10     The findings of the Commissioner as to any fact, if supported by substantial evidence, are

11  conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

12  more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

13  Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

14  conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.

15  N.L.R.B.*, 305 U.S. 197, 229 (1938)).

16     "The ALJ is responsible for determining credibility, resolving conflicts in medical

17  testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

18  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

19  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

20  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

21  III.     ANALYSIS

22      Plaintiff argues that the ALJ erred in (1) finding that she did not have any severe physical

23  impairments at step two of the sequential evaluation process, (2) rejecting the opinion of her

24  treating physician; (3) failing to provide a proper rationale for discounting her subjective

25  complaints; (4) failing to consider the side effects of her medication, and (5) posing a

26  hypothetical to the VE that did not include all her functional limitations.  ECF No. 15 at 24-48.

27  /////

28  /////

4

A.  <u>Substantial Evidence Supports the ALJ's Step Two Finding</u>

Plaintiff argues that the ALJ erred at the second step of the sequential evaluation process by finding that she did not have any severe physical impairments.  ECF No. 15 at 41-44.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  *Yuckert*, 482 U.S. at 153.  At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  An ALJ must consider all of the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities.  *Id*. § 404.1520(a); *Yuckert*, 482 U.S. at 145.  "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir.2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)).  Step two is "a de minimis screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence."  *Id*. at 687 (citations and quotation marks omitted and modification in original).

At step two the ALJ found that plaintiff's severe impairments included PTSD, mood disorder, dysthymia, and polysubstance dependence in remission.  AR 13.  The ALJ specifically found that the evidence did not support any severe physical limitation.  *Id*.  Substantial evidence supports this finding.

As noted by the ALJ, the documents completed and submitted by plaintiff consistently alleged disability due to mental limitations and not physical impairments.  In her Disability Report-Adult, plaintiff did not identify any physical impairment that limited her ability to work.  AR 175.  In her functional report, plaintiff indicated that she is depressed, has anxiety, and gets easily stressed, but she did not identify any limitations due to physical impairments.  Furthermore,

1    at her hearing plaintiff testified that her medical problems included PTSD, bipolar disorder,

2    anxiety and depression.  *Id*. at 46.  Although plaintiff was questioned by her own attorney at the

3    hearing, she did not specifically testify that she had a physical impairment that interfered with her

4    ability to work.  *See generally id*. at 28-64.  If plaintiff's ability to work is limited by physical

5    limitations, such arguments should have been fully developed at the administrative level.  *See*

6    *Solorzano v. Astrue*, No. 5:11-cv-0369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan 10, 2012)

7    ("Counsel are not supposed to be potted plants at administrative hearings.  They have an

8    obligation to take an active role and to raise issues that may impact the ALJ's decision while the

9    hearing is proceeding so that they can be addressed.").  The failure to do so supports the ALJ's

10   finding that plaintiff does not have any severe physical limitations.

11       More importantly, the medical evidence of record supports the ALJ's finding step-two

12   finding.  Dr. Littlepage examined plaintiff on April 2, 2011, and concluded that plaintiff did not

13   have any physical limitations that would impair her ability to work.[3]  AR 291.  Plaintiff argues

14   that Dr. Littlepage's opinion is contradicted by medical records from plaintiff's treating

15   physician, Dr. Harold Budhram.  Those records document right shoulder crepitus, decreased

16   abduction of the right shoulder, and an impingement in her cervical spine.  ECF No. 15 at 34; *see*

17   AR 319-320.  While these records indicate the presence of a medically-determinable physical

18   impairment, Dr. Budhram did not opine that such impairment was significantly limiting.  Indeed,

19   he only provided an opinion as to plaintiff's mental limitation.  *See* AR 381-385.

20       Thus, the medical evidence of record supports the ALJ's finding that plaintiff did not

21   have a severe physical impairment.  Furthermore, plaintiff's own statements demonstrate that her

22   disability claim was primarily based on mental, not physical impairments.  Accordingly,

23   substantial evidence supports the ALJ's step-two finding.

24   /////

25   /////

26   /////

27   

28   
_____

[3] The state agency reviewing physicians also concluded that plaintiff did not have any physical limitations.  *Id*. at 74, 89.

6

B. **The ALJ Failed to Provided Specific and Legitimate Reasons for Discounting the Opinion of Plaintiff's Treating Physician**

Plaintiff next argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Budhram.  ECF No. 15 at 24-37.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff's treating physician Dr. Harold Budhram completed a Mental Residual Functional Capacity Questionnaire.  AR 381-385.  Dr. Budhram reported that plaintiff experienced, among other things, decreased energy, sleep and disturbance, and difficulty thinking and concentrating.  AR 382.  He opined that plaintiff was unable to remember work-like procedures and was limited in her ability to maintain regular attendance at work and perform

/////

7

1    at a consistent pace.  *Id*. at 333.  He also opined that plaintiff was limited in her ability to

2    withstand the normal stresses of work and in her ability to travel to unfamiliar places.  *Id*. at 384.

3          On February 8, 2011, plaintiff underwent a comprehensive psychiatric evaluation, which

4    was performed by Michael Maguire, Doctor of Psychology.  *Id*. at 282-285.  During the

5    examination, plaintiff reported a history of methamphetamine dependence and that she had been

6    molested as a child.  *Id*. at 282.  Dr. Maguire found that plaintiff was independent in her activities

7    of daily living; her concentration, persistence, and pace were within normal limits; attitude and

8    behavior was appropriate; stream of mental activity and speech was within normal limits; mood

9    and affect was appropriate; but her judgment and insight were poor.  *Id*. at 283-284.  However, he

10   found that plaintiff was not fully honest about taking her medication as prescribed, and that there

11   is a possibility she is not being forthcoming with her claims relating to her mental health

12   symptoms.  *Id*. at 285.  He diagnosed plaintiff with methamphetamine dependence in early full-

13   remission and opined that plaintiff maintained the ability to perform detailed and complex tasks,

14   could accept instructions from supervisors and interact with coworkers and the public, perform

15   work activities on a consistent basis, and maintain regular attendance and complete a normal

16   workweek without interruption from a psychiatric condition.  *Id*. at 285.

17         Non-examining physicians R. Tyl, M.D. and C. Eskander, M.D. reviewed the medical

18   reports and opined that plaintiff was not disabled.  *Id*. at 76, 80, 95.

19         In finding that plaintiff was not disabled, the ALJ gave great weight to the opinion Dr.

20   Maguire (the consultative examiner), while rejecting certain portions the opinion of Dr. Budhram

21   (the treating doctor).  AR 19-20.  Specifically, the ALJ stated that he "does not credit [Dr.

22   Budhram's] assessment that [plaintiff] is unable to meet competitive standards in remember [sic]

23   work-like procedures or precluded in ability to deal with stress of semiskilled or skilled work as

24   she is occasionally able to handle these tasks."  *Id*. at 20.  No other discussion regarding the

25   rejection of this treating opinion was given.  Because Dr. Budhram's opinion was contradicted by

26   Dr. Maguire's opinion, the ALJ was required to give specific and legitimate reasons for rejecting

27   his treating opinion.

28   /////

An ALJ may satisfy his burden of providing specific and legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ's conclusory finding that plaintiff "is occasionally able to handle these tasks" does not satisfy this burden. While the ALJ's opinion does discuss the medical records and plaintiff's testimony, the ALJ does not identify what evidence supports his conclusion. It is therefore unclear what specific evidence in the record supports the ALJ's finding that, contrary to Dr. Budhram's opinion, plaintiff maintains the ability to remember work-like procedures and deal with normal work stress.

The Ninth Circuit has found that similar conclusory explanations fail to satisfy the "specific and legitimate" standard. In *Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299, the Ninth Circuit stated that:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

Here, the ALJ offered only his conclusion that plaintiff "is occasionally able to handle these tasks," notwithstanding Dr. Budhram's opinion to the contrary. He does not set forth his interpretation of the evidence and explain why such evidence undermines Dr. Budhram's treating opinion. The ALJ's conclusory dismissal of Dr. Budhram's opinion is tantamount to the conclusory statement in *Regenniter* and does not constitute a specific and legitimate reason for rejecting a treating source's opinion. *See Regenniter*, 166 F.3d at 1299.

Even more troubling is the failure to fully address all the opinions given by Dr. Budhram. In addition to opining that plaintiff was unable to maintain work-like procedures and seriously impaired in her ability to deal with normal work stress, Dr. Budhram found that plaintiff was seriously limited in her ability to maintain regular attendance, be punctual within customary tolerance, and perform at a consistent pace without an unreasonable number and length of rest periods. AR at 383. These limitations were not included in plaintiff's RFC, and therefore were

9

1   rejected by the ALJ.  The ALJ, however, failed to give any explanation as to why these opinions

2   were not credited.  As the ALJ failed to provide any reason for rejecting these opinions, it surely

3   cannot be said that he satisfied the "specific and legitimate" standard.

4           The Commissioner argues that the ALJ properly weighed the opinion evidence of record,

5   and appropriately relied on the opinion from Dr. Maguire, as his opinion was based on

6   independent clinical findings and therefore constitutes substantial evidence.  ECF No. 22 at 16.

7   The Commissioner correctly notes that an opinion from an examining source, such as Dr.

8   Maguire, can constitute substantial evidence where it is based on independent clinical findings.

9   *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (where a non-treating physician relies on

10  "independent clinical findings that differ from the findings of the treating source," the findings

11  constitute substantial evidence).  However, as explained by the explained by the Ninth Circuit in

12  *Orr v. Astrue*, 495 F.3d 625,633 (9th Cir. 2007), "[e]ven when contradicted by an opinion of an

13  examining physician that constitutes substantial evidence, the treating physician's opinion is 'still

14  entitled to deference.'"  *Id.* (citing S.S.R. 96-2p at 4).  Therefore, "[e]ven if the treating doctor's

15  opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing

16  'specific and legitimate reasons' supported by substantial evidence in the record."  *Id.* at 633.   No

17  such reasons were provided here for rejecting Dr. Budhram's opinion.  Accordingly, the matter

18  must be remanded.[4]

19  IV.   <u>CONCLUSION</u>

20          The ALJ failed to apply the proper legal standard and support his decision with substantial

21  evidence.  Therefore, it is hereby RECOMMENDED that:

22          1.  Plaintiff's motion for summary judgment be granted;

23          2.  The Commissioner's cross-motion for summary judgment be denied; and

24          3.  The Clerk be directed to enter judgment in plaintiff's favor; and

25  /////

26  /////

27  

28          [4]  As the matter must be remanded for further consideration of the medical evidence, the
court declines to address plaintiff's remaining arguments.

10

1    4.  The matter be remanded for further consideration.

2         These findings and recommendations are submitted to the United States District Judge

3  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

4  after being served with these findings and recommendations, any party may file written

5  objections with the court and serve a copy on all parties.  Such a document should be captioned

6  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

7  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

8  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:  March 12, 2015.

11  EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE